UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

ROSALIE CASTILLE                          CIVIL ACTION NO. 6:11-cv-01571

VERSUS                                    JUDGE MELANÇON

MICHAEL J. ASTRUE,                        MAGISTRATE JUDGE HANNA
COMMISSIONER OF
SOCIAL SECURITY


## REPORT  AND  RECOMMENDATION


Rosalie Castille appeals the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be AFFIRMED.


### BACKGROUND

The claimant, Rosalie Castille, was born on November 4, 1961.[1]  On July 13, 2007, at the age of 46, she applied for disability insurance benefits and Supplemental Security Income, alleging a disability onset date of April 25, 2006.[2]  A presumably contemporaneous disability report indicates that the conditions allegedly limiting her ability to work were vision problems including a detached retina and an on-the-job

---

[1]      Rec. Doc. 7-1 at 39.

[2]      Rec. Doc. 7-1 at 105, 110.

injury that resulted from inhaling sawdust.[3]   On appeal, however, Ms. Castille complains of vision problems, headaches, depression, and borderline intellectual functioning.[4]  At the hearing she also complained about back and stomach pain.[5]

Ms. Castille dropped out of school in the eighth grade.[6]  She has a limited ability to read and cannot write.[7]  Because of her poor vision, she no longer drives.[8] She has a spotty work history, having worked peeling crawfish, filleting catfish, wrapping sandwiches in a fast food restaurant, cleaning offices, and doing sheetrock preparation work in a shipyard.[9]  There is no evidence that she has held any job for a prolonged period of time.  She last worked in September 2008 when she was let go from an office cleaning job that she had held for approximately nine months.[10]

---

[3]      Rec. Doc. 7-1 at 156.

[4]      Rec. Doc. 10 at 2.

[5]      Rec. Doc. 7-1 at 45.

[6]      Rec. Doc. 7-1 at 42.

[7]      Rec. Doc. 7-1 at 43.

[8]      Rec. Doc. 7-1 at 42.

[9]      Rec. Doc. 7-1 at 41, 44-45, 118-121.

[10]     Rec. Doc. 7-1 at

A determination was made that Ms. Castille is not disabled.[11]  A hearing was then held on October 2, 2009 before Administrative Law Judge ("ALJ") Lawrence T. Ragona.[12]  An unfavorable ruling was issued on October 27, 2009.[13]  Ms. Castille requested review by the Appeals Council.[14]  On April 8, 2011, the Appeals Council denied her request for review.[15]   The Appeals Council's decision is the Commissioner's final decision for purposes of judicial review.  This appeal followed in August 2011.[16]

### ASSIGNMENT OF ERRORS

Ms. Castille argues that the Commissioner erred in (1) failing to properly evaluate whether her impairments preclude her from sustaining employment; (2) failing to properly evaluate her residual functional capacity; and (3) failing to consider all of the vocational expert's opinions concerning her ability to work.

---

[11]     Rec. Doc. 7-1 at 61.

[12]     Rec. Doc. 7-1 at 36-60.

[13]     Rec. Doc. 7-1 at 26-35.

[14]     Rec. Doc. 7-1 at 21.

[15]     Rec. Doc. 7-1 at 17-19.

[16]     Rec. Doc. 1.

## STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to determining whether the decision was supported by substantial evidence and whether the proper legal standards were applied in reaching the decision.[17]   If the Commissioner's findings are supported by substantial evidence, they must be affirmed.[18]  Substantial evidence is more than a mere scintilla and less than a preponderance.[19]  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.[20]   Finding substantial evidence requires scrutiny of the entire record as a whole.[21]  In applying this standard, the court may not re-weigh the evidence or substitute its judgment for that of the Commissioner.[22]

---

[17]      *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001); *Harris v. Apfel,* 209 F.3d 413, 417 (5th Cir. 2000).

[18]      *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

[19]      *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

[20]      *Boyd v. Apfel,* 239 F.3d at 704.

[21]      *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

[22]      *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d at 135.

## DISCUSSION

A claimant seeking Social Security benefits bears the burden of proving that he or she is disabled.[23]  Disability is defined in the Social Security regulations as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[24]  Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit.[25]

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled.  At step one, an individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.  At step two, an individual who does not have a severe impairment will not be found disabled.  At step three, an individual who meets or equals an impairment listed in the regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1 will be considered disabled without consideration of vocational factors.  If an individual is capable of performing

---

[23]     *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005); *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992); *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990); *Fraga v. Bowen*, 810 F.2d 1296, 1301 (5th Cir. 1987).

[24]     42 U.S.C. § 423(d)(1)(A).

[25]     20 C.F.R. § 404.1572(a)-(b).

the work he has done in the past, a finding of not disabled must be made at step four.
If an individual's impairment precludes him from performing his past work, other
factors including age, education, past work experience, and residual functional
capacity must be considered to determine if the claimant can perform any other work
at step five.[26]

Before going from step three to step four, the Commissioner assesses the
claimant's residual functional capacity[27] by determining the most the claimant can still
do despite his physical and mental limitations based on all relevant evidence in the
claimant's record.[28]  The claimant's residual functional capacity is used at the fourth
step to determine if the claimant can still do his past relevant work, and is used at the
fifth step to determine whether the claimant can adjust to any other type of work.[29]

The claimant bears the burden of proof on the first four steps.[30]  At the fifth
step, however, the Commissioner bears the burden of showing that the claimant can

---

[26]     *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991), summarizing 20 C.F.R. §
404.1520(b)-(f).  See, also, *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d
267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

[27]     20 C.F.R. § 404.1520(a)(4).

[28]     20 C.F.R. § 404.1545(a)(1).

[29]     20 C.F.R. § 404.1520(e).

[30]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton
v. Apfel*, 209 F.3d at 453.

perform other substantial work in the national economy.[31]   This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence.[32]   If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding.[33]  If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends.[34]

In this case, the Commissioner found, at step one, that Ms. Castille has not engaged in substantial gainful activity since her alleged disability onset date of April 25, 2006.[35]  That finding is supported by evidence in the record.

At step two, the ALJ found that Ms. Castille has the following severe impairments:   visual problems, headaches, an adjustment disorder, borderline

---

[31]   *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[32]   *Fraga v. Bowen*, 810 F.2d at 1304.

[33]   *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[34]   *Anthony v. Sullivan*, 954 F.2d at 293, citing *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988).  See, also, 20 C.F.R. § 404.1520(a)(4).

[35]   Rec. Doc. 7-1 at 28.

intellectual functioning, and a personality disorder.[36]   This is also supported by evidence in the record.

At step three, the ALJ found that Ms. Castille does not have an impairment or a combination of impairments that meets or medically equals a listed impairment.[37] Ms. Castille does not argue that her impairments meet or medically equal a listed impairment.  She does, however, contend that the ALJ erred in failing to properly consider the effect that the combination of her impairments has on her ability to maintain employment.

The ALJ found that Ms. Castille retains the residual functional capacity to perform a modified range of light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b), finding that she is precluded from (a) working at unprotected heights, (b) working around dangerous machinery, (c) doing work that requires reading fine print, (d) doing work requiring that she be exposed to pulmonary irritants on a regular basis, (e) performing complex work, and (f) doing work requiring unlimited interaction with others.[38]  Ms. Castille argues that the ALJ erred in finding her able to perform any work at all.

---

[36]     Rec. Doc. 7-1 at 28.

[37]     Rec. Doc. 7-1 at 29.

[38]     Rec. Doc. 7-1 at 31.

At step four of the analysis, the ALJ found that Ms. Castille has no relevant past work.[39]  Ms. Castille does not dispute this finding.

At step five, the ALJ found that Ms. Castille is capable of performing other jobs existing in the national economy, including cleaner, housekeeper, and fast food worker.[40]  Therefore, the ALJ found that Ms. Castille has not been disabled from April 25, 2006 through the date of the decision.[41]

Ms. Castille argues that there are three reasons why the ALJ's decision is erroneous, each of which will be considered in turn.

1.     **THE ALJ PROPERLY EVALUATED WHETHER MS. CASTILLE'S IMPAIRMENTS PRECLUDE SUSTAINED EMPLOYMENT**

Ms. Castille's first assignment of error is that the ALJ failed to consider the impact that all of her impairments might have on her ability to maintain employment over a period of time.  In particular, she argues that the ALJ ignored her neck and back pain, downplayed the significance of her headache pain, and disregarded the consulting psychologists' opinions concerning her mental state in order to find that she is capable of sustaining employment.

---

[39]     Rec. Doc. 7-1 at 34.

[40]     Rec. Doc. 7-1 at 19.

[41]     Rec. Doc. 7-1 at 20.

There is no requirement that an ALJ make a finding regarding the sustainability of employment in all cases.[42]  Such a finding is necessary only if the claimant's "ailment waxes and wanes in its manifestation of disabling symptoms."[43]  Here, there is no allegation that Ms. Castille's impairments wax and wane; consequently, there was no requirement that the ALJ's ruling include a separate finding concerning the sustainability of employment.

In such cases, including this one, "the claimant's ability to maintain employment is subsumed in the RFC [residual functional capacity] determination."[44] "A finding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can hold whatever job he finds for a significant period of time."[45]  "[T]he ability of a claimant to perform jobs in the national economy must take into account the actual ability of the claimant to find and hold a job in the real world."[46]  This requirement

---

[42]     *Perez v. Barnhart*, 415 F.3d at 465; *Frank v. Barnhart*, 326 F.3d 618, 621 (5th Cir. 2003).

[43]     *Perez v. Barnhart*, 415 F.3d at 465, quoting *Frank v. Barnhart*, 326 F.3d at 619.

[44]     *Perez v. Barnhart*, 415 F.3d at 465.

[45]     *Singletary v. Bowen*, 798 F.2d at 822 (emphasis in original).

[46]     *Singletary v. Bowen*, 798 F.2d at 822, quoting *Parsons v. Heckler*, 739 F.2d 1334, 1340 (8th Cir. 1984).

extends to cases involving mental as well as physical impairments.[47]  Therefore, the ALJ's finding that Ms. Castille has the residual functional capacity to perform a modified range of light work must be understood as implicitly incorporating a finding that she is capable of sustaining employment in such a job.  Accordingly, her complaints about the ALJ's evaluation of her neck and back pain, headache pain, and mental state are actually complaints about the ALJ's determination of her residual functional capacity.

## 2.    THE ALJ PROPERLY EVALUATED MS. CASTILLE'S RESIDUAL FUNCTIONAL CAPACITY

In assessing a claimant's residual functional capacity, the ALJ must consider the limitations and restrictions imposed by all of the claimant's impairments, even those that are not severe.[48]  A person's residual functional capacity is the most that she can still do despite her physical and mental limitations.  A residual functional capacity evaluation should be based on all relevant evidence in the claimant's record.

Ms. Castille accuses the ALJ of basing his conclusion concerning her residual functional capacity on random statements about her daily activities and on "musings"

---

[47]      *Watson v. Barnhart*, 288 F.3d 212, 217–18 (5th Cir. 2002).

[48]      SSR 96–8p; 20 C.F.R. § 416.923.

by an eye doctor who saw her only once and found that she might be malingering.[49] But that is not an accurate representation of the basis for the ALJ's determination that Ms. Castille is capable of performing a modified range of light work.  The ALJ reviewed all of Ms. Castille's relevant medical records and evaluated not only her own subjective complaints but the opinions of the doctors who treated her and those who consulted on this case.  The record contains substantial evidence to support the ALJ's determination.

Ms. Castille argues that the ALJ failed to take seriously her pain complaints. It is true that pain can constitute a disabling impairment,[50] but pain constitutes a disabling condition only when it is constant, unremitting, and wholly unresponsive to therapeutic treatment.[51]  Mild or moderate pain is not disabling.  Furthermore, subjective complaints, such as complaints of pain, must be corroborated by objective medical evidence.[52]  While an ALJ must take into account a claimant's subjective allegations of pain in determining residual functional capacity, the claimant must produce objective medical evidence of a condition that reasonably could be expected

---

[49]    Rec. Doc. 10 at 8.

[50]    *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Cook v. Heckler*, 750 F.2d 391, 395 (5th Cir. 1985).

[51]    *Falco v. Shalala,* 27 F.3d at 163; *Selders v. Sullivan*, 914 F.2d at 618-19.

[52]    *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001).

-12-

to produce the level of pain alleged.[53]   The mere existence of pain does not automatically create grounds for disability, and subjective evidence of pain does not take precedence over conflicting medical evidence.[54]   The absence of objective factors can justify the conclusion that a witness lacks credibility.[55]

Ms. Castille complains about two types of pain:  headaches and back pain.  The ALJ found that her headaches are a severe impairment, but he did not find that her back pain is severe.  Pain can limit the range of jobs a claimant can perform, but there should be clinical or laboratory diagnostic studies showing the existence of a medical impairment that could reasonably be expected to produce the amount of pain alleged.[56]  In this case, Ms. Castille suggests that her headaches are related to her vision problems, but there is no medical evidence or opinion corroborating that suggestion.   In fact, there is nothing in the record establishing a cause for her headaches.  She links her back pain to a series of automobile accidents, but there are no objective findings or medical opinions corroborating the severity of pain that she claims to be having.  An ALJ may discount a claimant's subjective complaints of pain

---

[53]     *Harper v. Sullivan*, 887 F.2d 92, 96 (5th Cir. 1989).

[54]     *Harper v. Sullivan*, 887 F.2d at 96.

[55]     *Dominguez v. Astrue*, 286 Fed. App'x 182, 187 (5th Cir. 2008), citing *Hollis v. Bowen*, 837 F.2d 1378, 1385 (5th Cir. 1988) (*per curiam*).

[56]     *Selders v. Sullivan*, 914 F.2d at 618.

-13-

and limitations if there are inconsistencies between the claimant's allegations and the evidence as a whole.[57]

In this case, Ms. Castille points to her visits to Dr. J. Khorsandi in 2008 and 2009 to support her claim of severe back pain.   In March 2009, she told Dr. Khorsandi that she had low back pain that she attributed to a car accident in December 2008.[58]   At the hearing, she also tied her back pain to the December 2008 accident but testified that she did not seek medical attention after the accident.[59]   In July 2009, she told Dr. Khorsandi about a second accident, which occurred in February 2009,[60] and in August 2009, she first told Dr. Khorsandi about a third motor vehicle accident that also occurred the previous February.[61]

Although Dr. Khorsandi noted that her back pain is sometimes worsened with standing too long,[62] he described her pain as "mild" in his most recent notes.[63]   He prescribed pain medication for her, but the record does not indicate that she is taking

---

[57]     *Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995).

[58]     Rec. Doc. 7-1 a 436.

[59]     Rec. Doc. 7-1 at 45.

[60]     Rec. Doc. 7-1 at 435.

[61]     Rec. Doc. 7-1 at 434.

[62]     Rec. Doc. 7-1 at 431.

[63]     Rec. Doc. 7-1 at 430.

the type of medications that are prescribed for the treatment of severe pain. According to the record, Dr. Khorsandi did not do any diagnostic testing nor did he refer Ms. Castille to a neurologist, orthopedist, or physical therapist.  The record contains no evidence that she is seeing a pain management specialist.  In summary, there are no objective test results or medical opinions substantiating her complaints of severe back pain or establishing that her ability to perform modified light duty work is compromised by her pain.

An ALJ may discount a claimant's subjective complaints when the alleged impairments contradict the medical evidence.[64]  For these reasons, there is no basis for concluding that the ALJ improperly weighed her headaches or back pain when evaluating her residual functional capacity.

It should also be noted that Ms. Castille alleges an onset of disability in April 2006, more than two years prior to the first of her three alleged motor vehicle accidents.  Any back or neck pain that might have resulted from those accidents cannot form the basis for her claimed disability, although it must be taken into account when evaluating her residual functional capacity.

With regard to Ms. Castille's mental problems, Dr. Buxton, a consulting clinical psychologist tested Ms. Castille and found that she functions in the low end

---

[64]        *Hernandez v. Astrue*, 278 Fed. App'x 333, 340 (5th Cir. 2008).

of the borderline range of subaverage general intellect.[65]  He also found that she has

an adjustment disorder with mixed anxiety and depressed mood and a personality

disorder.[66]  Dr. Buxton assessed Ms. Castille's "prospects that she would be able to

maintain full-time gainful employment over a protracted period of time" as

"somewhat bleak," not based solely upon his evaluation of her mental state but also

based on her claims of headaches and vision problems.[67]

Dr. Buxton opined that Ms. Castille's mental problems should be treated with

medication and counseling.[68]  At the time of the hearing, however, Ms. Castille stated

that she had received mental health treatment at an undisclosed time in the past but

was no longer receiving any such treatment.[69]  Implicit in Dr. Buxton's treatment

recommendation is his opinion that Ms. Castille's condition might be improved if she

received appropriate treatment.  A condition that can be controlled or remedied by

medication or therapy cannot serve as a basis for a finding of disability.[70]  Therefore,

---

[65]     Rec. Doc. 7-1 at 351.

[66]     Rec. Doc. 7-1 at 352.

[67]     Rec. Doc. 7-1 at 352.

[68]     Rec. Doc. 7-1 at 352.

[69]     Rec. Doc. 7-1 at 46.

[70]     *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988).

-16-

Dr. Buxton's comments concerning Ms. Castille's employability must be tempered by his treatment recommendation.

The ALJ did not accept Dr. Buxton's opinion because his consideration of headaches and vision problems was beyond the scope of his expertise as a psychologist and because, at the time of Dr. Buxton's examination, Ms. Castille was working.[71]  These are valid reasons to discount Dr. Buxton's opinion.  First, at the time that Ms. Castille was examined by Dr. Buxton, she was working approximately 25 hours per week, and she does not claim that she left that job because she was medically unable to perform the work; she claims that she was let go.[72]  Second, the Social Security regulations explain that more weight is given to the opinion of a specialist about medical issues *related to his or her area of specialty* than to the opinion of a source who is not a specialist.[73]  Conversely, a specialist's opinions are not entitled to any particular amount of weight when they do not relate to his area of specialty or expertise.

---

[71]        Rec. Doc. 7-1 at 33.

[72]        Rec. Doc. 7-1 at 41.

[73]        20 CFR § 404.1527 [emphasis added].

-17-

Furthermore, Dr. Peavy, the consultative ophthalmologist, suggested in his report that Ms. Castille might have been malingering. This was based on his personal observation of her behavior, which did not seem to match the results of the tests he used to evaluate her vision. In his function analysis, however, Dr. Peavy did not wholly discredit her poor vision claims. Instead, he stated that she cannot read fine print, drive, or operate machinery.[74] These restrictions were not only noted by the ALJ but incorporated in his finding concerning the type of work that he found Ms. Castille retains the capacity to perform. Thus, although the ALJ found Dr. Peavy's opinion that Ms. Castille might have been malingering credible, he also found the work restrictions noted by Dr. Peavy to be credible and used them in evaluating her residual functional capacity.

Aside from her hearing testimony as to what she can and cannot do, Ms. Castille has offered no evidence to support a conclusion that her actual residual functional capacity is anything other than that found by the Commissioner.

The ALJ followed the appropriate two-step process[75] in first determining that there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce Ms. Castille's symptoms and then

---

[74]     Rec. Doc. 7-1 at 371.

[75]     See, e.g., *Salgado v. Astrue*, 271 Fed. App'x 456, 458 (5th Cir. 2008).

evaluating the intensity, persistence, and limiting effects of her symptoms to determine the extent to which her impairments limit her ability to do basic work activities.  Following this procedure, the ALJ found that Ms. Castille's statements concerning the intensity, persistence, and limiting effects of her symptoms are not credible to the extent that they are inconsistent with the residual functional capacity assessment.  This finding is supported by the evidence in the record.

**3.    THE ALJ PROPERLY CONSIDERED THE VOCATIONAL EXPERT'S OPINIONS**

At the hearing, the vocational expert testified, in response to a hypothetical question posed by the ALJ mirroring the claimant's age, education, work experience, and residual functional capacity, that the hypothetical subject of the question could perform jobs such as cleaner/housekeeper and fast food worker that are available in large numbers in the national economy.[76]  On appeal, Ms. Castille argues that the ALJ failed to consider all of the testimony given by the vocational expert at the hearing and suggests that, if the entirety of the expert's testimony had been considered along with all of the evidence in the record, the ALJ should have concluded that Ms. Castille cannot maintain employment in the jobs found by the expert to be within her capabilities.   In particular, Ms. Castille notes that, in response to a follow-up

_____

[76]        Rec. Doc. 7-1 at 58.

hypothetical question, the expert testified that he did not think she could do the identified jobs if "she virtually could not see to do certain types of personal care items like cook or laundry."[77]  Additionally, the expert testified that she would be unable to maintain substantial gainful activity "if she had pain or limitations which would interfere with her ability to function to the degree that she couldn't follow even simple one or two-step instructions."[78] Ms. Castille argues that the vocational experts responses to these two follow-up questions were improperly ignored by the ALJ.

It is well established, however, that the ALJ is not bound by vocational expert testimony that is based upon evidentiary assumptions that are ultimately rejected by the ALJ.[79]  In this case, the ALJ rejected the claimant's testimony regarding the extent of her functional limitations, after comparing it with other evidence in the record. Therefore, the ALJ's original hypothetical question to the vocational expert reasonably incorporated all of the claimant's limitations that were recognized by the ALJ.

Ms. Castille now suggests a series of hypothetical questions that she claims should have been asked by the ALJ during the hearing.  When an ALJ asks a

---

[77]     Rec. Doc. 7-1 at 59.

[78]     Rec. Doc. 701 at 59.

[79]     See *Owens v. Heckler*, 770 F.2d 1276, 1282 (5th Cir. 1985); *Masterson v. Barnhart*, 309 F.3d at 273.

defective hypothetical question, there is reversible error only if the hypothetical question posed to the vocational expert by the ALJ fails to reasonably incorporate all disabilities of the claimant recognized by the ALJ, and the claimant or his representative is not afforded the opportunity to correct the deficiencies in the ALJ's question.[80]  Ms. Castille was represented at the hearing by her attorney.  He had the opportunity to ask questions of the vocational expert, but declined to do so.  Since Ms. Castille's counsel had the opportunity to ask his own hypothetical questions at the hearing in order to correct any perceived deficiencies, and since the first question that was posed by the ALJ reasonably incorporates all of the disabilities that the ALJ recognized, there is no basis for reversible error.  Accordingly, the ALJ's finding with regard to Ms. Castille's residual functional capacity is entitled to deference.

## CONCLUSION AND RECOMMENDATION

For the reasons explained above, the undersigned finds that the Commissioner's ruling that Ms. Castille is not disabled is supported by substantial evidence.  Ms. Castille had the burden of proving that she is disabled, and she did not carry that burden.  Accordingly,

---

[80]     *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).

**IT IS THE RECOMMENDATION** of the undersigned that the decision of the Commissioner be AFFIRMED.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed in Lafayette, Louisiana, this 29th day of November 2012.

PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE

-22-